WILLIAM T. SACKS, APPELLEE, V. BERT H. LYTLE ET AL., APPELLANTS.

FILED APRIL 25, 1930. No. 27165.

*Mockett & Finkelstein* and *W. A. Robertson*, for appellants.

*H. E. Holeman, Dale P. Stough* and *J. C. McNerney*, contra.

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON, EBERLY, and DAY, JJ., and LIGHTNER, District Judge.

THOMPSON, J.

This is an ordinary action in equity instituted by Sacks, the appellee, against Lytle, one of the appellants, to settle and wind up the affairs of a "farm lease-partnership," organized on November 13, 1924, in which they were equal partners, by and through a receiver. After the issues between Sacks and Lytle were duly joined and hearing had, the court on February 21, 1929, entered decree finding that the partnership existing between Sacks and Lytle should be dissolved, and a receiver appointed; and ordered the dissolution of such partnership; further, that Sacks have judgment of $2,282.46 against Lytle on four certain promissory notes, but that the priority of this Sacks judgment as a debt against Lytle should be withheld for determination until the final report of the receiver; that A. M. Longman be appointed receiver to collect the assets of such partnership, to receive claims and report the same to the court, upon his taking oath as such receiver and giving bond of $3,000; that on qualifying such receiver be authorized to sell the hogs, live stock and perishable property of the partnership, and report the same to the court. Such decree is in no way challenged.

In harmony with the above judgment, the receiver qualified on March 9, 1929, and on March 13, 1929, he filed his inventory and report. Thereafter on March 19, 1929, the court entered an order authorizing the receiver to sell all the partnership assets.

On March 29, 1929, the other appellants, individual creditors of Lytle, intervened.

At final hearing, May 21, 1929, the court entered judgment and decree of distribution (after making certain deductions here uncomplained of) finding that there was left to be distributed, after all partnership debts were paid, cash in the sum of $4,939.14, one-half of which, to wit, $2,469.57, was the property of Sacks, and the other half ($2,469.57) that of Lytle. As to the Lytle half the priority of liens was found, and distribution decreed to be made in the order and amounts here named: The Bank of Eagle, $250 (which is not complained of); Sacks' judgment against Lytle, $2,282.46; Lytle, $500 for claimed statutory exemption, if any balance of such fund remained; the residue, if any, to the respective interveners in equal priorities. Lytle and such interveners appeal.

While numerous claimed reasons for reversing the judgment of distribution of the trial court are urged by the respective appellants, in our view these may all be reduced to one contention: The court erred in not decreeing Lytle's claimed statutory exemption of $500 the second lien to be paid, the interveners' judgments the third, and Sacks' judgment the fourth.

Considering the rights of these would-be distributees in the order in which they are respectively placed by the trial court: Sacks and Lytle under the "farm lease-partnership" agreement were to each furnish one-half of all the personal property which went into the enterprise. Sacks had on the farm at the date of such agreement, hogs, cattle, horses, mules, poultry, grain, farm machinery, and other things ordinarily used on a farm, of the then agreed value of $2,467.52, and Lytle none. In order that each might have an equal share therein Sacks sold Lytle an undivided one-half interest in what he, Sacks, had and took in payment therefor (as stated in Sacks' petition) Lytle's promissory note in usual form for $1,233.76, due and payable March 1, 1926, on which note there was paid by Lytle on January 16, 1926, the sum of $362. No other payments having been

made, this note was set up in Sacks' petition, and the amount due thereon, as well as that due and unpaid on three other notes, made a part of the petition of Sacks (which latter three notes we find to be but personal obligations of Lytle running to Sacks), formed the basis of the original judgment of $2,282.46 entered, as heretofore stated, on February 21, 1929. Sacks prays that the amount thus found due him be decreed to be a lien on, and first paid out of, the Lytle share of the proceeds before Lytle's exemption is allowed, or any of Lytle's creditors, disconnected with the partnership, are paid. With respect to this contention: Sacks took Lytle's note in payment of the obligation which formed the consideration therefor, and pursued such note to a personal judgment against Lytle. Therefore, Sacks cannot now be heard to say it is the debt of the partnership, or that the partnership property shall be impressed with a lien for its payment, or that he was other than an ordinary creditor of Lytle.

As to Lytle's claimed statutory exemption of $500: His only appearance in the action, after the rendition of the judgment of February 21, 1929 (except to file a motion for a new trial after the entry of decree of distribution), was the filing of an affidavit, in usual form under our statutes, praying that he might be, as head of a family, allowed out of his one-half of the net proceeds of the partnership the sum of $500; that it be declared the prior lien in suit and first paid out of his aforesaid distributive share. Lytle did not plead to the petitions of the interveners, nor to the answer of Sacks thereto. However, as we find, he made application for his exemption timely and in a proper manner, and the same should be allowed.

As to the interveners: On July 21, 1928, the action to wind up this partnership was pending, and so continued. The "farm lease-partnership" agreement, as an entirety, formed an integral part of the petition of Sacks, as a copy of such agreement was attached thereto and made a part thereof. Such petition also included the claimed rights of the parties in and to the properties therein involved, being

the properties covered by the aforesaid "farm lease-partner-ship" agreement. Nine of these interveners obtained their judgments on February 11, 1929, and on the 13th day of the same month procured their executions and made their levies. The other two interveners recovered their judgments and made their levies at a slightly later date. The total face amount of such judgments of the interveners is $927.63.

Section 8595, Comp. St. 1922, so far as material here, provides: "When the summons has been served or publication made, the action is pending so as to charge third persons with notice of pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof, as against the plaintiff's title." Thus, each intervener, at the time of the recovery of his judgment and attempted levy, and long prior thereto, had constructive notice, binding upon him, as to the matters involved in this lawsuit, all of which were merged in the original judgment so entered herein on February 21, 1929. Then, in their respective petitions of intervention they, in substance, state that they levied on the undivided one-half interest of Lytle in and to specific chattels then on a farm of which Lytle was a renter under a lease with Sacks, but that they did not know the provisions of the lease. Thus it will be seen that they not only had constructive notice of the true status of these properties, by and through the pendency of this action, but actual notice that Lytle was, as to the properties about to be levied upon, the owner of but an undivided interest therein under a lease from Sacks. This actual knowledge, if reasonably and seasonably pursued, would have led to a full knowledge of the true status of these properties. It might further be said that whatever rights accrued to these interveners by reason of their levies, if a right could be said to have at any time existed, were abandoned; as these partnership properties that were levied upon were not sold under the levies, but by the receiver, with the other properties of his trust, and the proceeds commingled with the other trust funds. Further, the value of the specific chattels involved

was not proved by interveners, nor the price at which each article sold shown in the receiver's report. The interveners do not complain of the aforesaid treatment of the chattels levied upon, but on the contrary ask distribution out of the trust fund as an entirety. They stand in the same relation to the fund as does Sacks, that is, that of an ordinary creditor of Lytle. If, in law, the judgment of Sacks and that of these respective interveners stand on a parity as to the fund in question, it follows, in equity, that as the fund will not satisfy each judgment in its entirety a *pro rata* distribution thereof should be decreed. Hence, it is considered by us that the priority of liens and order of payment out of the $2,469.57 (Lytle's share of the net proceeds of the partnership) should be as follows: First, the Bank of Eagle, $250; second, Lytle his $500 statutory exemption; and, third, the remainder to Sacks and these respective interveners *pro rata;* each and all of such payments to be made as of the date of the decree of distribution.

The judgment of the trial court as to the priority of liens, entered May 21, 1929, is reversed and the cause remanded, with directions to enter decree in harmony with this opinion; each party paying his own taxable costs of this appeal.

REVERSED IN PART, AND REMANDED, WITH DIRECTIONS.